# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**ANTHONY DUNN**
**individually and on behalf of all others similarly situated,**

                    **Plaintiff.**

                    **v.**

**SANTA FE NATURAL TOBACCO COMPANY, INC.,**

                    **Defendant.**

Case No. 1:15-cv-1142

**CLASS ACTION COMPLAINT**

DEMAND FOR JURY TRIAL

## INTRODUCTION

Plaintiff Anthony Dunn files this Class Action Complaint on behalf of himself and all others similarly situated, by and through his undersigned attorneys, against Defendant Santa Fe Natural Tobacco Co. ("Santa Fe" or "Defendant"). Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief based upon, among other things, the investigation conducted by his attorneys.

## NATURE OF THE CASE

1.    Plaintiff brings this class action individually and on behalf of the Classes, as defined below, against the Defendant to obtain relief, including among other things, damages and injunctive relief. Plaintiff seeks redress for Defendant's marketing, promotion, distribution and

sale of its tobacco Products, as defined below, packaged and advertised as "natural." The word natural is prominently displayed on the front label of each of the following products:

    a.   American Spirit Regular;

    b.   American Spirit Perique's;

    c.   American Spirit Regular Filter;

    d.   American Spirit Non-Filter;

    e.   American Spirit Organic Light Filter;

    f.   American Spirit Menthol Filter;

    g.   American Spirit Menthol Light Filter;

    h.   American Spirit Organic Regular Filter;

    i.   American Spirit Medium Filter;

    j.   American Spirit Light Filter;

    k.   American Spirit Ultra Light Filter;

    l.   American Spirit Roll-Your-Own Original Blend;

    m.   American Spirit Roll-Your-Own 100% U.S. Grown; and

    n.   Any other American Spirit brand cigarettes marketed as being natural.

(the "Products" or individually, "Product").

    2.    Defendant intended for consumers to interpret this label on its Products as healthier, and less harmful, than tobacco products without such labels.

    3.    Defendant is aware that these claims provide no added benefits to smokers and in fact, are equally as harmful as regular brands.

2

4.      Defendant's misrepresentations about the Products were uniform and were communicated to Plaintiff, and every other member of the Classes, at every point of purchase and consumption throughout the Class Period.[1]

5.      Plaintiff and Class members relied on Defendant's representations, and as a result of Defendant's failure to properly market and advertise its Products, Plaintiff has suffered damages.

## PARTIES

6.      Plaintiff is a citizen of Minnesota, residing in Ramsey County, Minnesota. Plaintiff purchased American Spirit cigarettes from various retail locations in Minneapolis and Saint Paul, Minnesota, in 2015, including a pack of American Spirit Light Filter cigarettes for approximately $10 at the Holiday Station Store at 1301 Industrial Boulevard NE, Minneapolis, Minnesota on December 4, 2015.

7.      Plaintiff purchased the Products because he believed the Products were natural based on the labels. Plaintiff believes that natural products are healthier than non-natural products. Plaintiff believes that natural products do not contain synthetic ingredients. Plaintiff believes a synthetic ingredient is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources. Plaintiff would not have spent money and purchased Defendant's Products had

---

[1] The Class Period shall encompass all sales from December 16, 2009 through the date of entry of preliminary approval (the "Class Period").

he known that the Products were not natural. However, if Defendant's labeling was truthful, Plaintiff would continue purchasing the Products.

8.      Santa Fe Natural Tobacco Co. Inc. is a New Mexico corporation with its principle place of business located at 1 Plaza La Prensa, Santa Fe, New Mexico. Santa Fe is a tobacco manufacturer best known for its American Spirit cigarette brand.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28. U.S.C. §1332(d)(2), because there are more than 100 Class members, the Plaintiff is a citizen of Minnesota and Defendant is a citizen of New Mexico, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is organized under the law of New Mexico and maintains its principal place of business in New Mexico.

## FACTUAL ALLEGATIONS

11.      Tobacco use is currently the single greatest cause of preventable death in the world killing almost 6 million people each year. In the United States alone, over 16 million people are living with a disease caused by smoking. [2]

---

[2]  http://www.cdc.gov/tobacco/data_statistics/fact_sheets/fast_facts/ (last visited September 22, 2015).

12.     During the 1950s, scientific studies began linking tobacco with increased risks of smoking related diseases, and manufacturers, such as Defendant, recognized that increased awareness of the health risks associated with smoking threatened future cigarette sales.

13.     By the 1960s, the federal government began implementing numerous tobacco control laws and other government policies governing the advertising and marketing of tobacco products, with a primary objective of preventing individuals—especially children—from smoking, as well as reducing the harmful effects of tobacco.

14.     In response to consumers' growing health concerns, Defendant began marketing its tobacco Products with the health-related buzz word natural, which was intended to and did convey that these types of cigarettes were healthier than regular cigarettes.

15.     In 2009, Congress enacted the Family Smoking Prevention and Tobacco Control Act which authorized the Food and Drug Administration ("FDA") to regulate the manufacture, distribution, and marketing of tobacco products. It also requires tobacco companies to conspicuously display warning labels regarding the dangers of tobacco use on its tobacco products.[3]

16.     In theory, these warning labels were meant to deter consumers from smoking, or at the very least, make consumers clearly aware of the serious health implications associated with smoking. However, companies such as Defendant have diminished the impact of these warning labels by prominently placing the natural claim on its Products.

---

[3]http://www.fda.gov/TobaccoProducts/GuidanceComplianceRegulatoryInformation/ucm298595. htm (last visited September 23, 2015).

17.     By marketing and advertising its product with words associated with health, Defendant implies to consumers that its Products provide health benefits and/or are less hazardous than other cigarettes.

18.     To label the Products as natural creates consumer deception and confusion. A research article published in the U.S. National Library of Medicine demonstrates the extent of consumer confusion regarding cigarette labels as described above:[4]

    a.  [S]mokers initially expressed confusion about how to interpret the term "natural" in relation to cigarettes and (2) after discussion of cigarette ingredients, smokers viewed "natural" cigarettes as healthier. These themes were remarkably consistent over time, despite occasional declines in the general popularity of "natural" products, and periodic media attention devoted to potentially hazardous cigarette ingredients. There was also little variation in themes by gender, race, age or cigarette preference.

    b.  Once informed that one cigarette contained fewer additives or had natural rather than artificial flavours, many smokers assumed that the natural cigarette was healthier or less harmful. For example, one focus group member regarded the point of an advertisement for a 100% natural tobacco cigarette with no artificial additives as an assurance that "they're lowering the health hazard…you're gonna live ten years longer". Another said she could "still smoke but without so much health worry."

    c.  One reason for the view that natural cigarettes posed fewer risks was smokers' perception that "chemicals" were unhealthy; a "chemical-free" cigarette was thus superior to a regular cigarette.

---

[4] *"I Always Thought They Were All Pure Tobacco": American Smokers' Perceptions of "Natural" Cigarettes and Tobacco Industry Advertising Strategies*, available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2807204/ (last visited September 23, 2015). These statements are true and Plaintiff alleges them herein.

6

19.     Earlier this year, American Spirit launched a national ad campaign; targeting magazines such as *Time, Sports Illustrated, Southern Living, Architectural Digest, Field and Stream, US Weekly, Rolling Stone, Car and Driver, Glamour, InStyle and Vanity Fair*. As Seth Moskowitz, a spokesman for Santa Fe Natural Tobacco Co., explained "the aim is to drive brand awareness, highlight American Spirit's 100-percent additive-free natural tobacco proposition, and generate trial among adult smokers."[5]

20.     Upon information and belief, American Spirit aims its campaign toward a more health-conscious, eco-friendly audience. Its label depicts an image of a Native American figure wearing a tribal headdress smoking a traditional ceremonial pipe, with the word natural located prominently above the name of the Products, positioning its cigarettes as spiritually healing as were the pipes associated with Native American pipe ceremonies[6] (see below).

---

[5]Convenience Store News, *National Ad Campaign Promotes RAI's Natural American Spirit* (July 14, 2015), *available at* http://www.csnews.com/product-categories/tobacco/national-ad-campaign-promotes-rais-natural-american-spirit.

[6] The Native American pipe ceremony is a sacred ritual for connecting physical and spiritual worlds. Native Americans believe the pipe to be a link between the earth and the sky.  Native Americans Online, http://www.native-americans-online.com/native-american-pipe-ceremony.html (last visited September 24, 2015).

 

21.     Furthermore, on August 27, 2015, the FDA issued a warning letter to Santa Fe requesting immediate corrective action regarding their cigarette marketing claims. The FDA found that Defendant's marketing and advertising of its Winston cigarettes implied—without scientific support—that their product presents a lower risk of tobacco related diseases, and that they are safer than regular cigarette brands, which is in violation of the Food and Drug Administration Act.[7]

22.     Defendant intended to and did in fact use claims the cigarettes were natural to distract consumers from the true deadly nature of tobacco and create a public perception and common belief among consumers that these types of cigarettes were safer than regular cigarettes.

23.     Reasonable consumers, including Plaintiff, purchased the Products based upon their belief that the Products were natural, and therefore healthier. However, a reasonable

---

[7] FDA Warning Letter, *Santa Fe Natural Tobacco Company, Inc.* (Aug. 27, 2015), *available at* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2015/ucm459778.htm

consumer would not deem the Products natural, and therefore healthier, if he/she knew that they were as unhealthy as other non-natural cigarettes.

24.     Hence, Defendant's claims that the Products are natural are false and misleading.

25.     Defendant has profited enormously from its false and misleading marketing of the Products. Consumers either would not have purchased the Products had they known they were not natural, or would have purchased a less expensive product.

**A.      Rule 9(b) Allegations**

26.     Federal Rule of Civil Procedure ("Rule") 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). As detailed in the paragraphs above, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

27.     WHO: Defendant made material misrepresentations and/or failed to adequately disclose material facts as detailed herein. Except as identified herein, Plaintiff is unaware, and therefore unable to identify, the true names and identities of those individuals at Defendant who are responsible for such material misrepresentations and/or omissions.

28.     WHAT: Defendant made material misrepresentations regarding the natural quality of the Products. Specifically, Defendant misrepresented that the Products were: natural and thereby healthier than other non-natural cigarettes. These representations were false and misleading because the Products are not healthier than non-natural cigarettes.

29.     WHEN: Defendant made the material misrepresentations, omissions, and non-disclosures detailed herein continuously at every point of purchase and consumption throughout the Class Period.

30.     WHERE: Defendant's material misrepresentations, omissions, and/or non-disclosures detailed herein were made, *inter alia*, on the packaging of the Products.

31.     HOW: Defendant made numerous, written material misrepresentations on the packaging of the Products that were designed to, and, in fact, did, mislead Plaintiff and Class members into purchasing the Products.

32.     WHY: Defendant engaged in the material misrepresentations, omissions, and non-disclosures detailed herein for the express purpose of inducing Plaintiff and other reasonable consumers to purchase and/or pay a premium for the Products based on the belief that the Products were natural. Defendant profited by selling the Products to thousands of unsuspecting consumers.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this suit as a class action on behalf of himself and all others similarly situated customers (the "Classes") pursuant to Fed. R. Civ. P. 23. Plaintiff seeks to represent the following Classes:

> a.  The "Minnesota Class," which consists of: All consumers within the State of Minnesota who purchased the Products during the applicable Class Period for their personal use, rather than for resale or distribution. Excluded from the Minnesota Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

10

      b. The "Nationwide Class," which consists of: All consumers in the United States and its territories who purchased the Products during the applicable Class Period for their personal use, rather than for resale or distribution. Excluded from the Nationwide Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

34.    The exact number of Class members is unknown as such information is in the exclusive control of the Defendant's. Plaintiff, however, believes that the Class encompasses hundreds of thousands of individuals throughout the United States. Therefore, the number of persons who are members of the Class described above are so numerous that joinder of all members in one action is impracticable.

35.    Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Defendant's complained herein were general applicable to the entire Class. These legal and factual questions include but are not limited to:

      a. The nature, scope and of operations of Defendant's wrongful practices;

      b. Whether Defendant materially misrepresented to the Class members that the Products are natural;

      c. Whether Defendant's misrepresentations and omissions were material to reasonable consumers;

      d. Whether Defendant's labeling, marketing, and sale of the Products constitutes an unfair, unlawful, or fraudulent business practice;

      e. Whether Defendant's labeling, marketing, and sale of the Products constitutes false advertising;

11

    f.   Whether Defendant's conduct amounts to violations of New Mexico's Unfair Trade Practices Act;

    g.   Whether Defendant negligently misrepresented the true danger of using its product;

    h.   Whether Defendant has been unjustly enriched;

    i.   Whether Plaintiff and Class members suffered damages as a result of Defendant's misconduct as described herein and, if so, the proper measure of damages.

36.    Plaintiff's claims are typical of those of other Class members because Plaintiff and all Class members were injured by the same wrongful practices of the Defendant's as described in this Complaint. Plaintiff's claims arise from the same practices and course of conduct that gives rise to the claims of all Class members, and are based on the same legal theories.

37.    A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by Class members are likely to be in the millions of dollars, the individual damages incurred by each Class member resulting from Defendant's wrongful conduct are, as a general matter, too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting separate individual claims is remote and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such

12

cases. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials on the same factual issues.

38.     Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action and certification of the Class under Rule 23(b)(3) is proper.

39.      Plaintiff has no interests that are contrary to or in conflict with those of the Class he seeks to represent.

40.     Defendant has acted or refused to act on grounds generally applicable to all members of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to Class members as a whole and certification of the Class under rule 23(b)(2) proper.

## COUNT I
## VIOLATION OF MINNESOTA CONSUMER FRAUD ACT
### Minn. Stat. § 325F.69, *et seq.*
### (On behalf of the Minnesota Class)

41.     Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

42.     Plaintiff brings this claim individually and on behalf of the Minnesota Class.

43.     Minnesota Statute §325F.69, subd. 1, makes it unlawful for any person by use of "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive

practice, with intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."

44.     Defendant's business practices, in advertising, marketing and selling its Products as natural, constitute the use of fraud, false pretense, false promises, misrepresentations, misleading statements and deceptive practices and, thus, constitute multiple, separate violations of Minn. Stat. §325F.69.

45.     By engaging in the conduct described herein, Defendant violated and continues to violate Minn. Stat. §325F.69, subd. 1.

46.     Defendant's wrongful conduct and use of false pretenses, false promises, misrepresentations, and misleading statements, all with the intent that others relied on those statements, includes, by way of example and not by limitation:

        a.   Defendant's fraudulent, misleading, and deceptive statements and practices relating to its Products;

        b.   Defendant's concealment of the true characteristics of its Products; and

        c.   Defendant's continued sale of its Products after it knew about the misleading representations.

47.     Defendant's omissions and/or misrepresentations set forth in this Complaint are material in that they relate to information that would naturally affect the purchasing decision or conduct of purchasers, including Plaintiff and the other members of the Minnesota Class, regarding whether or not to purchase Defendant's Products.

14

48.     Had Plaintiff and the other members of the Minnesota Class known that Defendant's Products were not natural they would not have purchased the Products and/or paid a premium for the Products.

49.     Defendant fraudulently, negligently, recklessly, and/or intentionally concealed and/or failed to disclose the true characteristics of the Products for the purpose of inducing Plaintiff and the other members of the Minnesota Class to rely thereon, and Plaintiff and the other members of the Minnesota Class justifiably relied, to their detriment, upon the truth and completeness of Defendant's representations about its Products. Plaintiff and the other members of the Minnesota Class relied on Defendant to disclose all material facts and not omit any material information regarding its Products. That Plaintiff and the other members of the Minnesota Class were deceived is evidenced by the fact that Plaintiff and the other members of the Minnesota Class purchased the Products. Had they known the truth, Plaintiff and the other members of the Minnesota Class would not have bought Defendant's Products. Defendant's fraudulent and deceptive practice of advertising, marketing, and selling the Products repeatedly occurred in Defendant's trade or business and was capable of deceiving a substantial portion of the purchasing public.

50.     Where, as here, Plaintiff's claims inure to the public benefit as Defendant has misrepresented the natural quality of the Products to the public at large, Minnesota's private-attorney general statute, Minn. Stat. §8.31, subd. 3a, allows individuals who have been injured through a violation of these consumer-protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

15

51.     As a result of Defendant's fraud, false pretense, false promises, misrepresentations, misleading statements, and deceptive practices relating to the sale of its Products, Plaintiff and the other members of the Minnesota Class have suffered actual damages in that they would not have purchased the Products and/or paid a premium for the Products if they had known that the natural representations regarding the Products are false.

52.     Plaintiff and the other members of the Minnesota Class will continue to suffer injury if Defendant's deceptive conduct is not enjoined, including, but not limited to the purchase price of the Products and/or the premium paid for the Products.

53.     As a direct, proximate, and foreseeable result of Defendant's violation of the statute, Plaintiff and the other members of the Minnesota Class sustained damages.

54.     THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT II
## VIOLATION OF MINNESOTA UNLAWFUL TRADE PRACTICES ACT
### Minn. Stat. § 325D.13, *et seq.*
### (On behalf of the Minnesota Class)

55.     Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

56.     Minnesota Statute §325D.13 provides that, "No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

57.     By engaging in the conduct described herein, Defendant violated and continues to violate Minn. Stat. §325D.13.

16

58.     Where, as here, Plaintiff's claims inure to the public benefit as Defendant has misrepresented the natural quality of the Products to the public at large, Minnesota's private-attorney general statute, Minn. Stat. §8.31, subd. 3a, allows individuals who have been injured through a violation of these consumer-protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

59.     Defendant's wrongful conduct and misrepresentation of the true quality of its Products includes, by way of example and not by limitation:

      a.   Defendant's fraudulent, misleading and deceptive statements and practices relating to its Products;

      b.   Defendant's concealment of the true characteristics of its Products; and

      c.   Defendant's continued sale of its Products after it knew about the misleading representations.

60.     Defendant and its agents and distributors also misrepresented the true characteristics of Defendant's Products by making the various statements about the alleged natural quality and characteristics of the Products as stated above.

61.     Defendant's omissions and misrepresentations set forth in this Complaint are material in that they relate to information that would naturally affect the purchasing decision or conduct of purchasers, including Plaintiff and the Minnesota Class members, regarding whether or not to purchase Defendant's Products.

62.     As a result of Defendant's practices relating to misrepresentation of the true characteristics of the Products, Plaintiff and the Minnesota Class members have suffered actual

damages in that they would not have purchased the Products and/or paid a premium for the Products if they had known that the natural representations regarding the Products were and are false.

63.     In order to prevent future injury to Plaintiff and the Minnesota Class, Plaintiff and the Minnesota Class seek injunctive relief in the form of a label change removing all deceptive and misleading statements.

64.     As a direct, proximate and foreseeable result of Defendant's violation of the statute, Plaintiff and the other Minnesota Class members were injured and suffered damages, and are entitled to recover their actual damages, costs and disbursements, including costs of investigation and reasonable attorneys' fees, as well as injunctive relief, including restitution, as determined by the Court, pursuant to Minnesota law, including Minn. Stat. §§ 8.31, subd. 1 and 3a and 325D.15.

65.     THEREFORE, Plaintiff prays for relief as set forth below.

**COUNT III**
**VIOLATION OF MINNESOTA DECEPTIVE TRADE PRACTICES ACT**
**Minn. Stat. § 325D.44, *et seq.***
**(On behalf of the Minnesota Class)**

66.     Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

67.     Minnesota Statutes § 325D.44, subd. 1, provides in part:

A person engages in deceptive trade practices when, in the course of

business, vocation, or occupation, the person

\* \* \*

(5)     Represents that goods or services have…characteristics, ingredients, uses, benefits…that they do not have…

(7)     Represents that goods or services are of a particular standard, quality, or grade,…if they are of another. . . .

(13)   Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

68.     By engaging in the conduct described herein, Defendant violated and continues to violate Minn. Stat. § 325D.44.

69.     Where, as here, Plaintiff's claims inure to the public benefit as Defendant has misrepresented the natural quality of the Products to the public at large, Minnesota's private-attorney general statute, Minn. Stat. §8.31, subd. 3a, allows individuals who have been injured through a violation of these consumer-protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

70.     Defendant's wrongful conduct and misrepresentation of the true characteristics, standards, quality and grade of the Products includes, by way of example and not by limitation:

a.   Defendant's fraudulent, misleading and deceptive statements relating to the true characteristics, standards, quality and grade of its Products;

b.   Defendant's fraud and misrepresentation, of information about the characteristics of Defendant's Products, and the Defendant's knowledge of those misrepresentations; and

19

c.  Defendant's concealment of the true characteristics of its Products.

71.    Defendant and its agents and distributors also misrepresented the true characteristics, standards, quality and grade of the Products by making various statements about the alleged quality and characteristics of the Products herein.

72.    As a result of the Defendant's practices relating to misrepresentation of the true characteristics, standards, quality and grade of its Products, Plaintiff and the Minnesota Class members have suffered actual damages in that they would not have purchased the Products and/or paid a premium for the Products if they had known that the natural representations regarding the Products were and continue to be false.

73.    In order to prevent future injury to Plaintiff and the Minnesota Class, Plaintiff and the Minnesota Class seek injunctive relief in the form of a label change removing all deceptive and misleading statements.

74.    As a direct, proximate and foreseeable result of Defendant's violation of the statute, Plaintiff and the other Minnesota Class members were injured and suffered damages, and are entitled to recover their actual damages, costs and disbursements, including costs of investigation and reasonable attorneys' fees, as well as injunctive relief and other equitable relief, including restitution, as determined by the Court, pursuant to Minnesota law, including Minn. Stat. §8.31, subd. 1 and 3a and 325D.45.

75.    THEREFORE, Plaintiff prays for relief as set forth below.

**COUNT IV**
**VIOLATION OF MINNESOTA FALSE ADVERTISING LAW**
**Minn. Stat. § 325F.67, *et seq.***
**(On behalf of the Minnesota Class)**

76.     Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

77.     Minnesota Statutes §325F.67 provides in part:

> Any person, firm, corporation, or association who, with intent to sell or in any way dispose of merchandise, . . . service, directly or indirectly, to the public, for sale or distribution, or with intent to increase the consumption thereof, or to induce the public in any manner to enter into any obligation relating thereto, makes, publishes, disseminates, circulates, or place before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or places before the public, in this state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, in any other way, an advertisement of any sort regarding merchandise, . . . service or anything so offered to the public for use, consumption, purchase, or sale, which advertising contains any material assertion, representation or statement of fact which is untrue, deceptive, or misleading, shall, whether or not pecuniary or other specific damage to any other person occurs as a direct result thereof, be guilty of a misdemeanor, and any such act is declared to be a public nuisance and may be enjoined as such.

78.     By engaging in the conduct described herein, namely labeling the Products as natural, when, in fact, they are not, Defendant violated and continues to violate Minn. Stat. §325F.67.

79.     Where, as here, Plaintiff's claims inure to the public benefit, as Defendant has misrepresented the natural quality of the Products to the public at large, Minnesota's private-attorney general statute, Minn. Stat. §8.31, subd. 3a, allows individuals who have been injured

through a violation of these consumer-protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

80.    Defendant's untrue, deceptive and misleading assertions and representations about its Products include, by way of example and not by limitation:

81.    Defendant and its agents and distributors also made untrue, deceptive and misleading assertions and representations about its Products by making the various statements about the alleged characteristics of the Products referenced herein.

82.    Defendant's omissions and misrepresentations set forth in this Complaint are material in that they relate to information that would naturally affect the purchasing decision or conduct of purchasers, including Plaintiff and the Minnesota Class members, regarding whether or not to purchase Defendant's Products.

83.    As a result of the Defendant's untrue, deceptive and misleading assertions and representations about its Products, Plaintiff and the other Minnesota Class members have suffered actual damages in that they would not have purchased the Products and/or paid a premium for the Products if they had known that the natural representations regarding the Products were and continue to be false.

84.    Plaintiff and the Minnesota Class seek to enjoin Defendant from making untrue, deceptive and misleading assertions and representations about the Products.

85.    THEREFORE, Plaintiff prays for relief as set forth below.

**COUNT V**
**VIOLATION OF NEW MEXICO UNFAIR TRADE PRACTICES ACT**
**N.M.S.A. 1978, 57-12, *et seq.***
**(On behalf of the Nationwide Class)**

86.     Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

87.     Plaintiff asserts this cause of action on behalf of himself and the Nationwide Class members.

88.     This cause of action is brought pursuant to New Mexico's Unfair Trade Practices Act, N.M.S.A. 1978, § 57.12, *et seq.* ("UPA").

89.     The UPA declares unlawful deceptive and unfair trade practices, such as making false or misleading statements and other representations that have the capacity, tendency, or effect of deceiving or misleading consumers, failing to state material facts where the failure deceived or tends to deceive consumers; and engaging in deception, misrepresentation, or knowing concealment, suppression, or omission of material facts with the intent that consumers rely on the same in connection with the promotion and sale of consumer goods or services.

90.     Under the UPA, Defendant's misleading marketing representations of their natural tobacco are unfair, deceptive, and unconscionable.

91.      Defendant violated the UPA by engaging in fraudulent and deceptive marketing practices by purposefully misleading consumers to believe its tobacco Products labeled with health-related buzz words were safer than regular cigarette brands.

92.     Defendant violated the UPA by falsely representing that the Plaintiff and Nationwide Class members were receiving some type of health benefits from smoking its tobacco Products with labels such as natural.

93.     Defendant violated the UPA by failing to adequately inform consumers that their tobacco Products provide no benefits and are just as dangerous as regular tobacco products.

94.     Defendant's acts and practices as alleged in the foregoing paragraphs were false, misleading, deceptive, and unfair to consumers, in violation of the UPA and other applicable consumer protection laws.

95.     Plaintiff relied on Defendant's misrepresentations that's its tobacco Products were safer than other tobacco due to its natural qualities. Had Defendant disclosed to the Nationwide Class members that its Products were equally as dangerous as regular tobacco Products, and provide no health benefits as their advertising implies, Plaintiff and the Nationwide Class members would not have purchased Defendant's Products.

96.     THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

97.     Plaintiff re-alleges and incorporate by reference the allegations contained in all preceding paragraphs as though set forth fully herein.

98.     Under the circumstances alleged, the Defendant owed a duty to Plaintiff and the Nationwide Class to provide them with accurate information regarding the dangers associated with its product.

24

99.     Defendant represented to Plaintiff that its cigarettes were less dangerous than regular cigarettes because they were natural.

100.    Defendant's representations were false, negligent and material.

101.    Defendant negligently made these false misrepresentations with the understanding that Plaintiff and the Nationwide Class members would rely upon them.

102.    Plaintiff and Nationwide Class members did in fact reasonably rely upon these misrepresentations and concealments of material facts by the Defendant.

103.    As a direct and proximate result of the Defendant's negligent actions, Plaintiff and Nationwide Class members have suffered damages in an amount to be determined at trial.

104.    Plaintiff, on behalf of himself and all others similarly situated, demand judgment against Defendants for damages and declaratory relief.

105.    THEREFORE, Plaintiff prays for relief as set forth below.

**COUNT VII**
**UNJUST ENRICHMENT**
**(On behalf of the Nationwide Class)**
**(In the Alternative)**

106.    Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though set forth fully herein, and, to the extent necessary, this cause of action is pled in the alternative.

107.    Plaintiff and the Nationwide Class have unintentionally conferred substantial benefits on the Defendant by purchasing their tobacco Products labeled natural.

25

108.   Defendant knew or should have known that the payments they received were given and received with the expectation that Plaintiff and the Nationwide Class members were purchasing tobacco Products with an expectation of smoking safer cigarettes.

109.   Because of Defendant's wrongful activities, they have unlawfully received Plaintiff and Nationwide Class members' monies through corporate revenues, salaries and other financial benefits.

110.   Defendant, having retained the monies which unjustly enriched them, should be required by the Court to account to Plaintiff and the Nationwide Class for their unjust enrichment and the profits earned thereafter such monies.

111.   As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and Nationwide Class members have suffered damages in an amount to be determined at trial.

112.   Defendant should be required to disgorge all monies, profits and gains which they have obtained or will unjustly obtain in the future at the expense of Plaintiff's and Nationwide Class members'.

## PRAYER FOR RELIEF

113.    WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for a judgment to be entered upon Defendant as follows:

A.   Appointing Plaintiff as the representatives of the Class and their counsel as Class counsel;

B.   For economic and compensatory damages on behalf of Plaintiff and all Class members;

C.   For actual damages sustained;

D.   For treble damages pursuant to law, and all other actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

E.   For injunctive relief, compelling Defendant to cease their unlawful actions and to account to Plaintiff for their unjust enrichment;

F.   For reasonable attorneys' fees, reimbursement of all costs for the prosecution of this action, and pre-judgment and post-judgment interest; and

G.   For such other and further relief this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all issues within the instant so triable.

Dated: December 16, 2015          Respectfully submitted,

          /s/Nicholas Koluncich
          NICHOLAS KOLUNCICH III
          **LAW OFFICES OF NICHOLAS KOLUNCICH III, LLC**
          *nkoluncich@newmexicoclassactions.com*
          500 Marquette Avenue NW, Suite 1200
          Albuquerque, New Mexico 87102
          Telephone: (505) 881-2228 ; Fax  (505) 881-4288

          **HALUNEN LAW**
          Melissa Wolchansky (*pro hac vice to be filed*)
          *wolchansky@halunenlaw.com*
          Charles D. Moore (*pro hac vice to be filed*)
          *moore@halunenlaw.com*
          1650 IDS Center
          80 South 8th Street
          Minneapolis, Minnesota 55402
          Telephone: (612) 605-4098; Fax: (612) 605-4099

          **CUNEO GILBERT & LADUCA, LLP**
          Charles J. LaDuca, Esquire
          8120 Woodmont Avenue - Suite 810
          Bethesda, Maryland 20814
          Telephone: 202 789 3960

          **REESE LLP**
          Michael R. Reese (*pro hac vice to be filed*)
          *mreese@reesellp.com*
          100 West 93rd Street, 16th Floor
          New York, New York 10025
          Telephone: (212) 643-0500; Fax: (212) 253-4272

          *Counsel for Plaintiff and the Proposed Class*

28

# Exhibit A



# Exhibit B



# Exhibit C



# Exhibit D



# Exhibit E



# Exhibit F



# Exhibit G



# Exhibit H



# Exhibit I



# Exhibit J



# Exhibit K



# Exhibit L



# Exhibit M

