# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

IN RE: SANTA FE NATURAL TOBACCO
COMPANY MARKETING & SALES         No. MD 16-2695 JB/LF
PRACTICES AND PRODUCTS
LIABILITY LITIGATION

## <u>MEMORANDUM OPINION AND ORDER</u>[1]

**THIS MATTER** comes before the Court on: (i) ███████████████████

████████████████████████████████████████████████████████████████

█████████████████████ (ii) ████████████████████████████████████

█████████████████; and (iii) the Motion to Withdraw as Counsel, filed  January 3,

2018 (Doc. 148)("Motion to Withdraw").  The Court held a status conference on November 21,

2017, and hearings on December 21, 2017, and January 16, 2018.  ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[1]On June 12, 2018, the Court issued an Ex Parte Memorandum Opinion and Order, filed June 12, 2018 (Doc. 192)("Ex Parte MOO").  In it, the Court requested the Plaintiffs to propose redactions, if any were necessary, to protect confidential information.  <u>See</u> Ex Parte MOO at 1, n.1.  In response, the Plaintiffs move the Court to seal the Ex Parte MOO, but state that, if the Court is not inclined to seal the Ex Parte MOO, they move to redact portions of the Ex Parte MOO.  <u>See</u> Motion to Seal Documents at 1-2, filed June 22, 2018 (Doc. 194)("Motion to Seal").  The Court grants in part and denies in part the Motion to Seal.  It will not seal the Ex Parte MOO, but it will make public a version of the Ex Parte MOO with the Plaintiffs' requested redactions.  This Memorandum Opinion and Order is the redacted version of the Ex Parte MOO.

███████████████████████████████████████████████; and (ii) whether the Court should grant Mr. Yanchunis' Motion to Withdraw as both Plaintiffs' counsel and co-lead counsel. ███████████████████████████████████ ████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████

The Court will grant in part and deny in part, without prejudice, Mr. Yanchunis Motion to Withdraw for the time being. To the extent that he requests withdrawal as co-lead counsel, the Court grants that request. To the extent that he requests to withdraw from this proceeding entirely, the Court denies the Motion to Withdraw without prejudice, because Mr. Yanchunis has not yet submitted to the Court the Defendants' position on the Motion to Withdraw, as the Court ordered at the January Hearing. Consequently, the Court cannot ascertain whether the Motion to Withdraw is opposed or unopposed, so cannot tell whether Mr. Yanchunis has complied with the local rules. See D.N.M. LR-83.8(a)-(b). █████████████████████████████

███████████████████████████████████████████████████████

███████████

## FACTUAL BACKGROUND

The Court briefly summarizes the factual background for context. A more thorough discussion may be found in its Memorandum Opinion and Order at 4-9, 288 F. Supp. 3d 1087,



1128-32, filed December 21, 2017 (Doc. 146)("MOO"). The Plaintiffs are consumers who have purchased Natural American Spirit cigarettes. See Consolidated Complaint ¶¶ 12-23, at 4-11, filed January 12, 2017, (Doc. 82)("Complaint"). They contend that they bought those cigarettes at a price premium, because advertisements and branding, which describe the cigarettes as "Natural," "Additive-Free," and "Organic," led them to erroneously believe that Natural American cigarettes are safer and healthier than other cigarette brands. Complaint ¶¶ 4-6, at 2. See id. ¶¶ 12-23, at 4-11. The Plaintiffs also allege that the "Additive-Free" branding led them to think incorrectly that the Natural American menthol-variety cigarettes are additive-free.[3] Complaint ¶ 10, at 3. See id. ¶¶ 12-23, at 3-11.

**1.** ███████

████████████████████████████████████████ ███

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

---

[3]Menthol is a cigarette additive. See Complaint ¶ 10, at 3; MOO, at 173 n.49, 288 F. Supp. 3d 1087, 1234 n.49 ("Menthol is an organic molecule derived from mint.").

██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████

## **PROCEDURAL BACKGROUND**

The Plaintiffs brought suit in several jurisdictions alleging a variety of consumer-protection and common-law claims premised on unlawful deception.  See In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices Litig., 178 F. Supp. 3d 1377, 1378 (U.S. Jud. Pan. Mult. Lit. 2016)("Transfer Order").  One Plaintiff moved for multidistrict litigation centralization under 28 U.S.C. § 1407.  See Transfer Order, 178 F. Supp. 3d at 1378.  The Judicial Panel on Multidistrict Litigation concluded that the actions presented "involve common questions of fact, and that centralization will serve the convenience of the parties," and ordered consolidation. Transfer Order, 178 F. Supp. 3d at 1378-79.

On May 20, 2016, the Plaintiffs submitted the Plaintiffs' Leadership Petition, requesting that the Court appoint Mr. Schlesinger, Mr. Yanchunis, and Ms. Weiner[4] co-lead counsel. <u>See</u> Plaintiffs' Leadership Petition at 2-3. The Plaintiffs represented to the Court that, for four reasons, the co-lead counsel arrangement was best able to represent the proposed class' interest. <u>See</u> Plaintiffs' Leadership Petition at 4-7. First, all of the Plaintiffs' counsel agreed to the leadership structure, so, according to the Plaintiffs, the Court is obliged to approve the structure "based on the concept of 'private ordering.'"[5] Plaintiffs' Leadership Petition at 4 (quoting Manual for Complex Litigation § 21.11 (4th ed. 2004)). Second, they contend that Mr. Schlesinger, Mr. Yanchunis, and Ms. Weiner combined are eminently qualified in both tobacco litigation and consumer-protection litigation -- both relevant practice areas for this lawsuit. <u>See</u> Plaintiffs' Leadership Petition at 5-11. Third, the Plaintiffs' counsel represent that they can work cooperatively together. <u>See</u> Plaintiffs' Leadership Petition at 6. Finally, they argue that the leadership structure will preserve class resources by eliminating duplicative work. <u>See</u> Plaintiffs' Leadership Petition at 7.

The Court subsequently held a hearing on May 24, 2016. <u>See</u> Transcript of Scheduling Conference, taken May 24, 2016, filed June 1, 2016 (Doc. 34)("May Tr."). Mr. Yanchunis began by noting that the Court had asked the Plaintiffs to propose a leadership structure for this

---

[4]Ms. Weiner was known as Ms. Wolchansky at the time. She has since changed her last name.

[5]Private Ordering is the concept that public institutions, such as the Court, should delegate certain tasks to private entities for efficiency reasons. <u>See</u> Steven L. Schwarcz, <u>Private Ordering</u>, 97 Nw. U. L. Rev. 319, 320 (2002). As applied here, the argument appears to be that the Plaintiffs' attorneys are in a better position than the Court to determine how to arrange its leadership structure, so the Court should delegate that task to the Plaintiffs' attorneys, instead of wasting judicial resources on determining who is best fit to lead. As this Memorandum Opinion and Order explores, however, that premise in this instance may have been flawed.

complex case, and, after meeting in person, the Plaintiffs' counsel had agreed to a "consensus structure" that combined the talent and experience of tobacco litigation lawyers and consumer class-action lawyers. May Tr. at 26:8-22 (Yanchunis). Accordingly, the Plaintiffs chose Mr. Schlesinger, Mr. Yanchunis, and Ms. Weiner as co-lead counsel; Mr. Schlesinger brought tobacco litigation experience, and Mr. Yanchunis and Ms. Weiner brought to bear their consumer class-action acumen. See May Tr. at 26:24-25 (Yanchunis); Plaintiffs Leadership Petition at 7-11. Mr. Yanchunis then explained that their leadership agreement had methodically mapped out each firm's responsibilities to match that firm's experience in an effort to conserve class resources. See May Tr. at 28:4-16 (Yanchunis). For example, the Plaintiffs had divided up "client vetting, research trial experts, [and] discovery" between the firms "so that there's not overlapping of work." May Tr. at 28:8-11 (Yanchunis).

The Court expressed some concern with appointing co-lead counsel. See May Tr. at 29:7-8 (Court). It asked Mr. Yanchunis whether he had ever worked on a case with that number of co-leads. See May Tr. at 29:7-8 (Court). Mr. Yanchunis had worked with co-leads before see May Tr. at 29:9-14 (Yanchunis) and noted that, although he had never worked with Mr. Schlesinger or Ms. Weiner before this case, "in our time up until now, I can work with [both of them]," May Tr. at 30:13-14 (Yanchunis). The Court asked whether there was any downside to three co-leads, as opposed to just one lead, and Mr. Yanchunis said he could think of none. See May Tr. at 29:21-23 (Court, Yanchunis). He added that, in terms of billing, "on the plaintiffs' side of a class case, we work not based upon the hour," but upon the result; "[w]e do not get paid for our labor unless we are successful." May Tr. at 42:22-25 (Yanchunis).

Mr. Schlesinger agreed with Mr. Yanchunis' representations. See May Tr. at 43:18-19 (Schlesinger). He noted that he "really encouraged those that came from the consumer class

action side to join." May Tr. at 44:3-4. Mr. Schlesinger reasoned that tobacco companies' defense counsels typically have tremendous manpower at their disposal, and he thought that his tobacco-litigation firm could better match the Defendants' wealth of resources by joining forces with consumer class-action firms. <u>See</u> May Tr. at 44: 5-14 (Schlesinger). He concluded that "I don't see any reason why myself, John, and Melissa would ever disagree and put out separate ideas about how to proceed." May Tr. at 44:20-22 (Schlesinger).

The Defendants took no official position on the leadership structure, but conveyed concern that co-lead counsel would produce inefficiencies by duplicating efforts. <u>See</u> May Tr. at 32:23-33:3 (Monde). The Defendants noted, however, that it had not been difficult so far to negotiate with three co-lead Plaintiffs' counsel. <u>See</u> May Tr. at 33:23-24 (Monde). The Court subsequently granted the Plaintiffs' Leadership Petition and appointed Mr. Schlesinger, Mr. Yanchunis, and Ms. Weiner co-lead counsel. <u>See</u> Order Granting Joint Application for Appointment of Plaintiffs' Leadership Structure at 1, filed May 24, 2017 (Doc. 24)("Leadership Order"); May Tr. at 45:5-8 (Court).

On May 1, 2017, the parties, purportedly, jointly moved to continue the Defendants' Motion-to-Dismiss hearing, set for May 12, 2018. <u>See</u> Joint Motion to Continue and Extend Briefing Deadline at 1, filed May 1, 2017 (Doc. 100)("Joint Motion"). Although not contained in the Joint Motion, the continuance's main purpose was to allow for mediation. <u>See</u> Notice Regarding Motion to Continue Hearing and Extend Briefing Deadline at 1, filed May 2, 2017 (Doc. 101)("Joint Motion Response"); ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

The following day, Mr. Schlesinger filed the Joint Motion Response to notify the Court that,

although his electronic signature appeared on the Joint Motion, he had not authorized it.  See Joint Motion Response at 1.  He also notified the Court that he did not agree to continue the Motion-to-Dismiss hearing to allow for mediation, and he had conveyed that position to the Defendants, Mr. Yanchunis and Ms. Weiner.  See Joint Motion Response at 1.  Subsequently, everyone agreed to delay the hearing, and the Court entered an order rescheduling it for June 9, 2017.  See Order, filed May 10, 2017 (Doc. 106).

The Court later granted in part and denied in part the Defendant's Motion to Dismiss the Consolidated Amended Complaint and Incorporated Memorandum of Law, filed February 23, 2017 (Doc. 90)("Motion to Dismiss").  See MOO at 242-44, 288 F. Supp. 3d at 1276-77.  In relevant part here, in denying portions of the Motion to Dismiss, the Court cited supplemental authority that Mr. Schlesinger submitted.  See MOO at 167, 172, 288 F. Supp. 3d at 1231, 1233 (citing Discount Tobacco City & Lottery Inc. v. United States, 674 F.3d 509, 536 (6th Cir. 2012)).  The Court also declined to dismiss as moot the majority of the Plaintiffs' request for injunctive relief, because of a simultaneous FDA lawsuit[6] that was brought by Mr. Schlesinger.  See MOO at 242, 288 F. Supp. 3d at 1276.

**1.** ██████████████

████████████████████████████████████████████████████

████████████████████  ██  ████████████████████████████

---

[6]See Sproule v. United States Food and Drug Administration, No. 17-80709 (S.D. Fla.)(Rosenberg, J.)

██  █████████████████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████



2.

**3.** ███████████████████

███████████████████████████████████████████

█████████████████████████████████████ ██████ █████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████





**4.** ██████████

██████████████████████████████████████████████████

████████████████ ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████





**5.** ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███  ████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

███████████████



**6.**





[REDACTED]

**7.** **Yanchunis' Motion to Withdraw**.

On January 3, 2018, Mr. Yanchunis, in addition to Marisa K. Glassman, Keith R. Mitnik, and Scott W. Weinstein -- all attorneys at Mr. Yanchunis' firm, the Morgan & Morgan Complex Litigation Group -- moved to withdraw as "Counsel for Plaintiffs and the Class in this action pursuant to Local Rule 9010-2(c)." Motion to Withdraw at 1. Mr. Yanchunis also states that he seeks to withdraw as co-lead counsel and from any pending motions seeking relief from the Court. See Motion to Withdraw at 1. He concludes that a number of lawyers and their firms will continue to represent the Plaintiffs his firm currently represents. See Motion to Withdraw at 1.

**8.** ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████▆ ██████████████████████████████████

███████████████ █████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████



████████████████████████████████████████████████████████

███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

────────────────────

██▎ ██████████████████████████████████████████████████████
██████████████████████████████████





9.















Mr. Yanchunis affirmed Ms. Weiner's representations:

Jan Tr. at 117:1-10 (Court, Yanchunis).  Mr. Yanchunis argued that the Court could properly

grant the Motion to Withdraw, because he and his firm had "no named plaintiffs" in connection

with the complaint that was filed, and although "we do have a case in the MDL," those plaintiffs are "adequately represented by the lawyers who will remain." Jan. Tr. at 117:21-25 (Yanchunis). No one objected to Mr. Yanchunis' Motion to Withdraw. <u>See</u> Jan Tr. at 163:19-21 (Court, Schlesinger).







10.

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████ ██

## LAW REGARDING CLASS-ACTION COUNSEL

"Class counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). The adequacy-of-counsel analysis was traditionally conducted under rule 23(a)(4), but, since the 2003 amendments, that analysis has "now been moved entirely to rule 23(g)." Anderson Living Trust v. WPX Energy Production, LLC, 306 F.R.D. 312, 383 (D.N.M. 2015)(Browning, J.). See Sheinberg v. Sorensen, 606 F.3d 130, 132 (3d Cir. 2010). The advisory committee's notes clarify:

> The rule thus establishes the obligation of class counsel, an obligation that may be different from the customary obligations of counsel to individual clients. Appointment as class counsel means that the primary obligation of counsel is to the class rather than to any individual members of it. The class representatives do not have an unfettered right to fire class counsel. In the same vein, the class representatives cannot command class counsel to accept or reject a settlement proposal. To the contrary, class counsel must determine whether seeking the court's approval of a settlement would be in the best interests of the class as a whole.

Fed. R. Civ. P. 23 advisory committee's note to the 1998 amendments. Professor William B. Rubenstein of Harvard Law School explains that "class counsel, once appointed, is now the paramount representative of the class, not the class representatives." 1 William B. Rubenstein, Newberg on Class Actions § 3:82, at 430 (5th ed. 2012). "The Advisory Committee note

implies, quite strongly, that it is class counsel who speaks for the class, not the class representatives." Rubenstein, supra, at 430-31. Rule 23 makes clear that it is the court's responsibility, and not the class representatives', to monitor class counsel's performance. See Rubenstein, supra, at 431 ("The Advisory Committee note essentially acknowledges that Rule 23(g) is aimed at responding to the fiction inherent in the conventional pretense that the class representative monitored class counsel. Rule 23(g) shifts this counsel-monitoring function from the class representatives to the court. . . ."); Fed R. Civ. P. 23(g)(1)-(h)(4)(endowing the court with the responsibility to oversee class counsel's fees and nontaxable costs, and to determine whether class counsel can fairly and adequately represent the class' interests).

Class counsel's duty to "fairly and adequately protect the interest of the class" requires class counsel to avoid a conflict of interest with the class. Fed. R. Civ. P. 23(a). The United States Court of Appeals for the Tenth Circuit has held that avoiding a conflict of interest with the class is essential for class counsel to remain legally adequate: "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Rutter & Willbanks, Corp. v. Shell Oil Co., 314 F.3d 1180, 1188 (10th Cir. 2002)(citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)). In Rutter & Willbanks, Corp. v. Shell Oil Co., the Tenth Circuit determined that a conflict of interest did not exist when class counsel represented a class that was divided into multiple subgroups for distribution of a settlement. See 314 F.3d at 1188. The settlement's objectors argued that class counsel was conflicted, because it represented each of the subgroups collectively, but the subgroups had conflicting interests. See 314 F.3d at 1188. The Tenth Circuit explained that, to

the extent the different subgroups' interests were in conflict, the conflict would motivate class counsel to seek only the largest overall award so that all of its clients could be adequately compensated.  See 314 F.3d at 1188.  Additionally, in In re Integra Realty Res., Inc., 262 F.3d 1089 (10th Cir. 2001), the Tenth Circuit determined that class counsel's receipt of attorneys' fees in a settlement agreement does not place class counsel's interests regarding the settlement in conflict with the class and thus providing attorneys' fees does not render class counsel's representation inadequate.  See 262 F.3d at 1112.

On the other hand, the Tenth Circuit has concluded that class representatives were in conflict with a class when they demanded a fifteen-percent consultant's fee for their services as representatives.  See Carpenter v. Boeing, Co., 456 F.3d 1183, 1204 (10th Cir. 2006)("Carpenter").  In Carpenter, the class representatives publicly stated that they were privy to "privileged conversations with class counsel," which the district court found "strengthened its initial conclusion that they put their own interests above those of the class." 456 F.3d at 1204. Accordingly, the Tenth Circuit affirmed the district court's removal of the class representatives, concluding that they "would not 'fairly and adequately protect the interests of the class' as required by Rule 23(a)(4)".  456 F.3d at 1204 (quoting Fed. R. Civ. P. 23(a)(4)).

Professors Charles Alan Wright and Arthur Miller advise that, "[w]hen the court reviews the quality of the representation under Rule 23(a)(4), . . . it will consider the quality and experience of the attorneys for the class."  7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1769.1, at 443 (4th Ed. 2010)("Wright & Miller"). See Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions, Duke Law Center for Judicial Studies at 48 (2018)(forthcoming)("2018 Amendment Guidelines")("[W]hen one applicant seeks appointment as class counsel, the court may appoint

that applicant only if the applicant is adequate under Rule 23(g)(1) and (4).”); Fed. R. Civ. P. 23(g)(1)-(4). “[T]he class attorney must be qualified, experienced and generally able to conduct the proposed litigation. In sum, the lawyer must be willing and able to vigorously prosecute the action.” Wright and Miller, supra § 1769.1, at 444. “The competence of counsel may be shown by the quality of the briefs, as well as the arguments presented by the attorneys during the early stages of the case.” Wright and Miller, supra § 1769.1, 445-47. “[M]ere allegations that the class attorney is inexperienced or incompetent will not suffice to demonstrate inadequacy if other evidence suggests that the attorney is competent.” Wright and Miller, supra § 1769.1, at 453. “[A]ny conduct that suggests that class counsel may have been engaging in unethical behavior is relevant in determining the adequacy of the representation.” Wright and Miller, supra § 1769.1, at 469.

Frequently in MDLs, more than one applicant seeks to be appointed class counsel. See 2018 Amendment Guidelines at 48-49. See MDL Standards and Best Practices, Duke Law Center for Judicial Studies, at 29 (2014)(“MDL Best Practices”)(“Depending on the size and complexity of the case, it may be appropriate to appoint more than one individual to serve as lead counsel.”). When that competition occurs, the Court must “appoint the applicant best able to represent the interests of the class.” Fed. R. Civ. P. 23(g)(2). See 2018 Amendment Guidelines at 49. The rule has been interpreted such that courts may appoint multiple lawyers and firms as class counsel under rule 23(g). See 2018 Amendment Guidelines at 49. “[C]ourts recognize that often the combined human and economic resources of multiple firms will be essential to assure effective and adequate representation of the class.” 2018 Amendment Guidelines at 49. “MDL transferee judges, who must appoint plaintiff leadership at the outset of the proceedings, have often adopted the Rule 23(g) factors as qualifications for leadership roles.” 2018 Amendment

Guidelines, at 51 (citing In re Oil Spill by the Oil Rig "Deepwater Horizon", MDL No. 2179 (E.D. La. March 5, 2012)(Doc. 5960)(Barbier, J.)).  The benefit to adopting the rule 23(g) standards in an MDL is that "a Rule 23 appointment comes with a Rule text and an established jurisprudence that articulates and interprets the duties of class counsel vis-à-vis the court and the putative class." 2018 Amendment Guidelines at 53.  The appointment of interim class counsel under rule 23(g)(3) is particularly appropriate when multiple lawyers compete to represent the class. See 2018 Amendment Guidelines at 49 n.30. But see MDL Best Practices at 29 ("Appointing a committee to support lead counsel is usually more effective than staffing the litigation with numerous co-lead counsel, which can lead to delays in decision making and unnecessary duplication of effort.").  Interim appointment "[a]llows the transferee judge to utilize case management techniques, such as ordering the appointed plaintiffs' leadership group . . . to file a consolidated class action complaint." 2018 Amendment Guidelines at 49 n.30.

There has been general recognition in MDLs that "the ability to communicate and cooperate with others in the leadership structure, and with non-appointed attorneys," is important. 2018 Amendment Guidelines at 62.  To be sure, while "Interim Class Counsel appointed under Rule 23(g)(1) or (g)(3) are not fiduciaries toward other counsel (the duty of adequate representation, under Rule 23, runs to the class)," it is still necessary for attorneys with leadership roles in MDLs to be collegial. 2018 Amendment Guidelines at 62.  Courts have, thus, advised MDL lead counsels to "seek consensus . . . when making decisions that may have a critical impact on the litigation." 2018 Amendment Guidelines at 63.

"The transferee judge should also keep in mind that leadership needs may change over time." MDL Best Practices at 27. MDL Best Practices admonishes that "the transferee judge

should not appoint more than three attorneys to serve as lead counsel in any matter, in light of the potential for inefficiencies and ineffective decision making." <u>MDL Best Practices</u> at 29. MDL Best Practice 3C(iii) suggest: "The Transferee judge should direct counsel to identify cases in which they have served in a similar leadership capacity, describe their experience in managing complex litigation and their knowledge of the subject matter, and provide information about the resources they have available to contribute to the litigation." <u>MDL Best Practices</u> at 36. It also suggests that the transferee judge consider what other "ongoing professional commitments" potential lead counsel might have that will compete for their attention. <u>MDL Best Practices</u> at 36. While the transferee judge should take into account the attorneys' proposed leadership structure, "[c]ourts have a fundamental obligation to ensure that the proceedings will be fairly and efficiently conducted, regardless of the private arrangement among the parties." <u>MDL Best Practices</u> at 38-39. "The transferee judge should appoint lead counsel who have excellent management skills." <u>MDL Best Practices</u> at 40. "Lead counsel should have prior experience in managing multidistrict and other complex litigation or have demonstrated sufficient skill and experience[] to manage a complex proceeding." <u>MDL Best Practices</u> at 41. "Multidistrict litigation requires consistent and dedicated oversight and management, and those serving in leadership roles must be able and willing to make the litigation a priority throughout the course of the proceedings." <u>MDL Best Practices</u> at 42.

"The transferee judge should not hesitate to reconstitute the leadership team if it becomes necessary." <u>MDL Best Practices</u> at 49. The Manual for Complex Litigation reiterates that point: "An attorney may be removed from a position as lead, liaison, or class counsel, or (in an extreme case) from further participation in the case entirely." Manual for Complex Litigation (Fourth) § 10.154, at 19 (2004)("Complex Litigation Manual"). It also notes that "such a [demotion or

removal], however, may disrupt the litigation, may cause significant harm to the client's case and the reputation of the attorney or law firm, and can conflict with a party's right to counsel of its choosing." Complex Litigation Manual, supra, § 10.154, at 19. Before removing counsel, "the court should consider ordering that notice be given to the class under Rule 23(d)(2) to enable class members to express their views concerning their representation or to intervene in the action." Complex Litigation Manual, supra, § 10.154, at 19. "[S]ome courts have authorized discovery by the opposing party to determine whether class counsel's behavior satisfies ethical standards." Wright and Miller, supra, § 1769.1, at 469 (citing Stavrides v. Mellon Nat. Bank & Trust Co., 60 F.R.D. 634 (W.D. Pa. 1973)(McCune, J.)). Other courts have allowed "limited discovery into fee arrangements." Wright and Miller, supra, § 1769.1, at 469-70 (citing Klein v. Henry S. Miller Residential Serv. Inc., 82 F.R.D. 6 (N.D. Tex. 1978)(Porter, J.)).

In assessing class-counsel's adequacy, the Court has previously concluded that experience with the particular causes of action at issue is highly relevant to its adequacy-of-counsel analysis. See Daye v. Community Financial Serv. Centers, LLC, 313 F.R.D. 147, 179 (D.N.M. 2016)(Browning, J.)("Daye"). For example, in Daye, the consumer plaintiffs brought claims under the Truth in Lending Act, 15 U.S.C. §§ 1601-67f ("TILA"), and under the New Mexico Unfair Practice ("UPA"). See Daye, 313 F.R.D. at 152. The Court concluded that the plaintiffs' attorneys were adequate counsel -- in fact, more-than adequate counsel -- highlighting that "[t]hey have extensive experience litigating TILA and UPA cases, and in bringing class actions, including class actions under the TILA and the UPA." Daye, 313 F.R.D. at 179.

### LAW REGARDING WITHDRAWAL OF COUNSEL IN A CIVIL CASE

The Court has wide discretion in granting or denying an attorney's motion to withdraw representation. See Pallotino v. City of Rio Rancho, 425 F. App'x 710, 713 (10th Cir.

2011)(unpublished)(reviewing a district judge's determination on a withdrawal motion for "abuse of discretion")[15]; Abell v. Babbitt, 1999 WL 215403, at *2 (10th Cir. 1999)(unpublished)("The grant or denial of an attorney's motion to withdraw in a civil case is a matter addressed to the discretion of the trial court.")). The United States District Court for the District of New Mexico's Local Rules of Civil Procedure provide:

(a) **Unopposed Motion to Withdraw.** The motion to withdraw and proposed order must indicate consent of the client represented by the withdrawing attorney and:

- Notice of appointment of substitute attorney; or

- A statement of the client's intention to appear *pro se* and the client's address and telephone number; or

- If the client is a corporation, partnership or business entity other than a natural person, the client's address and telephone number.

(b) **Contested Motion to Withdraw.** The attorney must file and serve on all parties, including the client, a motion to withdraw. The attorney must give notice in the motion that objections must be served and filed within fourteen (14) days from date of service of the motion and that failure to object within this time constitutes consent to grant the motion.

(c) **Party is Corporation, Partnership or Business Entity Other Than a Natural Person.** A Motion to withdraw from representation of a corporation, partnership or business entity other than a natural person must include a notice that the corporation, partnership or business entity other than a natural person can appear only with an attorney. Absent entry of

---

[15]Pallotino v. City of Rio Rancho is an unpublished Tenth Circuit opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that Pallotino v. City of Rio Rancho and Abell v. Babbitt have persuasive value with respect to a material issue, and will assist the Court in its preparation of this Memorandum Opinion and Order.

> appearance by a new attorney, any filings made by the corporation, partnership or business entity other than a natural person may be stricken and default judgment or other sanctions imposed.

D.N.M. LR-Civ. 83.8.  The Court has previously granted an attorney's unopposed motion to withdraw under the local rules, even though the plaintiff had not yet secured a new attorney, because the plaintiff was "actively seeking new counsel, but does not have replacement counsel at this time." Bhandari v. CHA Southwest Community Health Corp., 2010 WL 2292908, at *2 (D.N.M. April 23, 2010)(Browning, J.).  Although allowing the withdrawal, the Court ordered the plaintiff's attorney to "submit a notice with [the plaintiff's] contact address and telephone number," so that the plaintiff could be contacted and so that the parties "would treat the case presently as one involving a pro se plaintiff." Bhandari v. CHA Southwest Community Health Corp., 2010 WL 2292908, at *2.  The Court has also granted an opposed motion to withdraw where the motion followed the local rule's requirements and where the "reason for withdrawal" -- that the attorney had left for a new firm -- "is a reasonable one," especially when two other attorneys would "continue to represent [the defendant's] interests." Trujillo v. Board of Education of Albuquerque Public Schools, 2006 WL 4079097, at *2 (D.N.M. May 10, 2006)(Browning, J.).  See McGuire-Pike v. Ameri-Ck, Inc., 2005 WL 3663692, at *3 (D.N.M. Sept. 22, 2005)(Browning, J.)(granting a motion to withdraw, because the "motions satisfy the procedural requirements of New Mexico's local rules," and because the defendant "has made it clear that it no longer desires their representation. . . .  [I]t is bankrupt and can no longer afford them.").

**ANALYSIS**

███████████████████████████████████    ██████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████   ██████████████████████
██████████████████

At this time, the Court will grant in part and deny in part, without prejudice, Mr. Yanchunis' Motion to Withdraw. The Court denies the Motion to Withdraw in part, because the Court still has not received the Defendants' position on Mr. Yanchunis' withdrawal from the case entirely. Should Mr. Yanchunis submit such an order with the Defendants unopposed to his withdrawal, the Court will let him withdraw from the case. The Court grants the Motion to Withdraw to the extent that it requests that Mr. Yanchunis be removed as co-lead counsel.

██████████████████████████████████████████████
████████████████████████████████████

**I.** ████████████████████████████████████████

The MDL statute -- 28 U.S.C. § 1407 -- does not provide a set of rules for the Court to apply if disputes arise. See 28 U.S.C. § 1407. Relevant here, it does not tell the Court the criteria for appointing lead MDL counsel when the lead role is contested. See 28 U.S.C. § 1407. See also In re: General Motors LLC Ignition Switch Litig., 2016 WL 1441804, at *6 (S.D.N.Y. April 12, 2016)(Furman, J.)(noting that there is no legal authority for the criteria to remove lead MDL counsel). Based on the statute's silence, courts have determined that "transferee judges have broad discretion to determine the course and scope of pretrial proceedings." In re Light Cigarettes Marketing and Sales Practices Litig., 856 F. Supp. 2d 1330, 1332 n.2 (U.S. Jud. Pan.

Mult. Lit. 2012). In exercising that discretion, MDL transferee judges have typically grafted rule 23 of the Federal Rules of Civil Procedure to MDL issues that bear resemblance to class-action issues. See In re National Football Leagues Sunday Ticket Antitrust Litig., 2016 WL 6693146, at *1-2 (C.D. Cal. May 23, 2016)(O'Connell, J.)(applying the rule 23(g) factors to determine who should be lead counsel in an MDL)("In re NFL")[16]; 2018 Amendment Guidelines, at 51 ("MDL transferee judges, who must appoint plaintiff leadership at the outset of the proceedings, have often adopted the Rule 23(g) factors as qualifications for leadership roles.")(citing In re Oil Spill by the Oil Rig "Deepwater Horizon", MDL No. 2179 (E.D. La. March 5, 2012)(Doc. 5960)(Barbier, J.)). Cf. In re Vioxx Product Liability Litig., 650 F. Supp. 2d 549, 558 (E.D. La. 2009)(Fallon, J.)(concluding that MDLs are "quasi-class action[s]" and applying the reasonable attorney's fee standard from rule 23(h)); In re Guidant Corp. Implantable Products Liability Litig., 2008 WL 682174, at *18 (D. Minn. March 7, 2008)(Frank, J.)).

The Court will follow that precedent and use rule 23(g) as a guide for determining who should be this MDL's lead counsel. There are many sound reasons for adopting rule 23(g) in this context, not the least of which is the Court does not have any better standard, the parties have not proposed a different one, and the principles underlying the rule 23(g) factors apply, for the most

---

[16]The Court notes that in, In re NFL, the Honorable Beverly Reid O'Connell, United States District Judge for the Central District of California, applies the rule 23(g) factors without much analysis why that rule would apply to an MDL. There is some indication that she applies those factors, because she equates appointing lead MDL counsel with appointing putative class counsel. Compare In re NFL, 2016 WL 6693146, at *1 ("Pending before the Court are four applications for appointment as lead counsel in this multidistrict litigation."), with id. at *4 ("While the Court appreciates these arguments, the Court must determine which applicants will best represent the interests of the putative class(es) in this MDL."). Notwithstanding this ambiguity, the Court concludes that In re NFL stands for the proposition that the rule 23(g) factors are appropriate factors to consider when appointing lead MDL counsel, because appointing lead MDL counsel was the issue before Judge O'Connell. See In re NFL, 2016 WL 6693146 at *1.

part, in the MDL context. The Court also adopts rule 23 as the appropriate framework, because it is preferable for the Court to apply known principles instead of creating ad hoc rules. See 2018 Amendment Guidelines at 53 ("a Rule 23 appointment comes with a Rule text and an established jurisprudence that articulates and interprets the duties of class counsel vis-à-vis the court and the putative class."). Ad hoc rules are, in general, unfair to litigants, because the losing party has no notice of the applicable legal rule, so is denied relief without an opportunity to be heard. Cf. Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 496 (1968)(barring the retrospective application of a new legal rule "when a party has significantly relied upon a clear and established doctrine . . . to his substantial injury," because "considerations of justice and fairness require that the new rule apply prospectively only."). In addition, by adopting rule 23, the Court may draw upon the judiciary's collective wisdom -- i.e., rule 23 caselaw -- to adjudicate this dispute. Given the litigation's stakes, having established doctrine upon which to draw is not only fairer to the litigants, but is likely to result in a better reasoned resolution.

As already mentioned, the rationales underlying rule 23(g)'s factors also support applying them in the MDL context. Rule 23(g)'s enumerated factors are: (i) the work counsel has done in identifying or investigating potential claims; (ii) counsel's experience in handling class actions, other complex litigation, and the claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. See Fed. R. Civ. P. 23(g)(1)(A). The Court first looks at counsel's experience. See Fed. R. Civ. P. 23(g)(1)(A)(ii)-(iii). The prevailing rationale for requiring experienced class counsel is that class actions have a broad binding effect on individuals who are not represented during the litigation -- i.e., absent class members -- so the attorney or attorneys prosecuting the litigation need to be

highly competent to adequately protect those unrepresented interests. See Eisen v. Carlisle and Jacqueline, 391 F.2d 555, 562 (2d Cir. 1968)("Traditionally, courts have expressed particular concern for the adequacy of representation in a class suit because the judgment conclusively determines the rights of absent class members.")(citing Hansberry v. Lee, 311 U.S. 32, 43 (1940)); Wright and Miller, supra § 1765 at 317; id. § 1769.1 at 442. The Court notes that those concerns do not necessarily arise in all MDLs, because not all MDLs have unrepresented proposed plaintiffs. See 28 U.S.C. § 1407 (allowing "consolidated pretrial proceedings" if there are "one or more common questions of fact," and consolidation "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions"). This MDL has proposed unrepresented plaintiffs, however, so the class-counsel rationale for considering experience applies with equal force here as it does to a regular class action. Moreover, while an MDL lead-counsel's decisions do not necessarily affect unrepresented proposed plaintiffs, they certainly have a broad effect on the litigation's attorneys and plaintiffs. The MDL lead counsel's decisions over discovery, for instance, could limit trial counsel's tactics and strategy at trial. Moreover, missteps on a motion to dismiss or at summary judgment could completely foreclose a claim prejudicing other counsel at a later time. The danger of prejudice is, perhaps, less than in the class context, as plaintiffs in an MDL without class-action dimensions have their own counsel, but the risk of prejudice still exists. Given the power an MDL lead counsel has to affect other plaintiffs and their attorneys, the Court concludes that it should consider potential lead counsel's experience. See In re NFL, 2016 WL 6693146, at *4 (appointing attorneys with extensive experience as co-lead counsel in an MDL as opposed to diversifying co-lead counsel with "fresh perspectives of younger attorneys"). Another reason that the Court should consider experience is that any MDL has many different attorneys

involved. To be effective, an MDL lead counsel needs to be more than just legally savvy, but must also know how to interact and lead a group of other, often experienced, attorneys.

The rationales behind rule 23(g)'s two other factors also militate toward applying them in this MDL's context. In addition to experience, Rule 23(g) requires the Court to consider class-counsel's resources, <u>see</u> Fed. R. Civ. P. 23(g)(1)(A)(iv), and the work counsel has done in identifying or investigating potential claims, <u>see</u> Fed R. Civ. P. 23(g)(1)(A)(i). The reason for inquiring into class counsel's resources appears to be the same reason as inquiring into class counsel's experience; the Court needs to ensure that the proposed unrepresented plaintiffs will not be prejudiced if class counsel begins the litigation, but is unable to complete it, because counsel runs out of funds. <u>See</u> <u>supra</u>, at 48-49. This rationale applies here, as there are proposed unrepresented plaintiffs in the MDL, and lead counsel's choices are likely to affect them. As to the last factor, neither the committee's notes nor the caselaw the Court could find makes clear why counsel's early case involvement is relevant to class-counsel appointment. The Court presumes the rationale is one of fairness; counsel that first starts the litigation and invests a good deal of time and energy into it, should, all other factors remaining equal, harvest the fruits of their labor as class counsel. This fairness rationale applies equally in the MDL or class-action context. Accordingly, the Court concludes it is appropriate to consider the work counsel has done in identifying the claims. These reasons suggest using rule 23(g) as a guide here, and, having considered them, the Court will look to rule 23(g).

Although concluding that the rationales underlying rule 23(g)'s enumerated factors apply in both the MDL and the class-action context, the Court is mindful that rule 23(g)'s inquiry affords the Court a great deal of discretion in its ultimate determination. <u>See</u> Fed. R. Civ. P. 23(g)(1)(B). In addition to the enumerated factors, the Court "may consider any other matter

pertinent to counsel's ability to fairly and adequately represent the interest of the class." Fed. R. Civ. P. 23(g)(1)(B). In using rule 23(g) as a framework, the Court does not retreat from the discretion that it has under the MDL statute, nor the discretion that rule 23 affords.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████ Under rule 23(g), in appointing class counsel, a Court must[17] consider: (i) the work counsel has done in identifying or investigating potential claims; (ii) counsel's experience in handling class actions, other complex litigation, and the claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. See Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider any other matter pertinent to assessing counsel's ability to fairly and adequately represent the interests of the class. See Fed. R. Civ. P. 23(g)(1)(B). The committee notes provide that, if there "are multiple adequate applicants" for class counsel, "the court is to go beyond scrutinizing the adequacy of counsel and make a comparison of the strengths of the various applications." Fed. R. Civ. P. 23 advisory committee's note to the 2003 amendments.

> [N]o single factor should be dispositive in selecting class counsel in cases in which there are multiple applicants. The fact that a given attorney filed the instant action, for example, might not weigh heavily in the decision if the lawyer had not done significant work identifying or investigating claims.

Fed. R. Civ. P. 23 advisory committee's note to the 2003 amendments.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

[17]Rule 23(g)'s language has "must consider," but because the Court is not appointing class counsel, and because it is exercising its discretion to adopt and use rule 23(g)'s factors in an MDL context, rule 23(g)'s "must" language does not bind the Court. Fed. R. Civ. P. 23(g).



















[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

## II. THE COURT GRANTS IN PART AND DENIES IN PART MR. YANCHUNIS' MOTION TO WITHDRAW.

The Court grants Mr. Yanchunis' request to withdraw as co-lead counsel, [REDACTED] [REDACTED] To the extent that Mr. Yanchunis requests to withdraw from the proceeding entirely, the Court denies the request, without prejudice.  The Court's decision is based in part on a colloquy that took place at the January hearing:

> THE COURT: . . .  Is there any objection to Mr. Yanchunis' motion to withdraw?

> MR. SCHLESINGER:  None.

> THE COURT:  Not hearing any, get R.J. Reynolds, [the Court] want[s] their position on it, and then submit [to the Court] an order on it.

MR. YANCHUNIS:  I will submit a separate order from whatever the Court is going to do today.

THE COURT:  . . . [I]f there is no opposition to yours, then I'll just need an order from you.

Jan. Tr. 163:19-164:3 (Court, Schlesinger, Yanchunis).  The Court denies the Motion to Withdraw insofar as Mr. Yanchunis requests to be removed from the case, because Mr. Yanchunis has not yet submitted an order or notified the Court the Defendants' position on his Motion to Withdraw.  Consequently, the Court does not know whether the Motion to Withdraw is opposed or unopposed.  See D.N.M. LR-83.8(a)-(b) (setting different rules for whether a motion to withdraw is opposed or unopposed).  Should Mr. Yanchunis secure the Defendants' consent, the Court notes that, in the proposed order, he "must indicate the consent of the client represented," D.N.M. LR-83.8(a), and because his client is still represented by other attorneys, he should indicate the name or names of those attorneys.

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████

**IT IS ORDERED** that: (i) ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████  (iii) Motion to Withdraw as Counsel, filed  January 3, 2018 (Doc. 148), is granted in part and denied in part, without prejudice, with leave to file a proposed order should Mr. Yanchunis

still wish to be out of the case. █████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Randi McGinn
Kathleen J. Love
McGinn, Carpenter, Montoya & Love, PA
Albuquerque, New Mexico

> *Attorneys for Plaintiffs Anthony Dunn, Ceyhan Haskal, Michael Robinson, Harry Vartanyan, Michael Yang, Doug Pyle, Nick Vadis, Theodore Rothman, Patrick Scott, Russell Brattain, Shannon White, C.M. LeCompte, Danae Grandison, Michael Laboon, Dave Moyer Victoria Cuebas, Ashley Waldo, Steve Okstad, Michael Anderson, Brooke Balocca, Elijah Bent, Sam Bowman, Makotie Brim, Terry Cliver, Christolow, George Coon, Gary Cruse, Margie Harris, Charles Honse, Clinton Hornton, Colin Jass, Christopher Jensen, Shereen Keith, Kelly Keiser, Asher King, Marilyn Komarinski, Jodi Kumpula, Tom Kurtz, Richard Kusick, Mike Lair, Tracy Lee, Kathleen Lelli, Robert Litwin, Linda MacDonald-Lewis, Richard Morelock, Deborah Orrtim Paulson, Richard Peavy, Concetta Schultz, Judy Sell, Harrison Thomas, Dani Weir, Tom Weir, Kyle Wiebe, Vicki Wilson, Timothy Ruggiero, Desire Gudmundson, Jacques-Rene Herbert, Sara Benson, Justin Sproule, Rudolph Miller, Carol Murphy, Francisco Chavez, Joshua Horne, Albert Lopez, Abigail Emmons, Charlene Blevins, Scott Johnston, Jason Cole, and Rachel King*

Scott P. Schlesinger
Jonathan Gdanski
Jeffrey Louis Haberman
Schlesinger Law Offices, P.A.
Fort Lauderdale, Florida

*Attorneys for Plaintiffs Justin Sproule, Patrick Scott, Victoria Cuebas, Steve Okstad, Michael Anderson, Brooke Balocca, Elijah Bent, Charlene Blevins, Sam Bowman, Matokie Brim, Terry Cliver, Christos Christolow, George Coon, Gary Cruse, Margie Harris, Charles Honse, Clinton Horton, Collin Jass, Christopher Jensen, Shereen Keith, Kelly Keiser, Asher King, Marilyn Komarinski, Jodi Kumpula, Tom Kurtz, Richard Kusick, Mike Lair, Tracy Lee, Kathleen Lelli, Robert Litwin, Linda MacDonald-Lewis, Rudolph Miller, Richard Morelock, Deborah Orrtim Paulson, Richard Peavy, Concetta Schultz, Judy Sell, Harrison Thomas, Dani Weir, Tom Weir, Kyle Wiebe, and Vicki Wilson*

Randi McGinn
Kathleen J. Love
McGinn, Carpenter, Montoya & Love, PA
Albuquerque, New Mexico

--and--

Charles J. LaDuca
Cuneo Gilbert & LaDuca, LLP
Washington, DC

--and--

Michael Robert Reese
Reese LLP
New York, New York

--and--

Nicholas Koluncich
Law Offices of Nicholas Koluncich, LLC
Albuquerque, New Mexico

--and--

Melissa Weiner
Charles D Moore
Halunen Law
Minneapolis, Minnesota

*Attorneys for Plaintiff Anthony Dunn*

Randi McGinn
Kathleen J. Love
McGinn, Carpenter, Montoya & Love, PA
Albuquerque, New Mexico

--and--

John C. Bienvenu
Bienvenu Law Office
Santa Fe, New Mexico

--and--

Mark H Donatelli
Reed C. Bienvenu
Rothstein Donatelli LLP
Santa Fe, New Mexico

--and--

Ronald Marron
Law Offices of Ronald A. Marron
San Diego, California

*Attorneys for Plaintiffs Ceyhan Haskal, Michael Robinson, Harry Vartanyan, Michael Yang, Doug Pyle, and Nick Vadis*

Charles S. Zimmerman
Zimmerman Reed
Scottsdale, Arizona

--and--

Caleb Marker
Zimmerman Reed
Manhattan Beach, California

--and--

Nancy Ruth Long
Long Komer & Associates, P.A.
Santa Fe, New Mexico

--and--

Randi McGinn
Kathleen J. Love
McGinn, Carpenter, Montoya & Love, PA
Albuquerque, New Mexico

*Attorneys for Plaintiffs Theodore Rothman and C.M. LeCompte*

Charles S. Zimmerman
Zimmerman Reed
Scottsdale, Arizona
--and--

Caleb Marker
Zimmerman Reed
Manhattan Beach, California

--and--

Randi McGinn
Kathleen J. Love
McGinn, Carpenter, Montoya & Love, PA
Albuquerque, New Mexico

*Attorneys for Plaintiffs Jacques-Rene Herbert, Sara Benson, Carol Murphy, Francisco Chavez, Abigail Emmons, and Joshua Horne*

Randi McGinn
Kathleen J. Love
McGinn, Carpenter, Montoya & Love, PA
Albuquerque, New Mexico

--and--

Douglas Gregory Blankinship
Finkelstein Blankinship, Frei-Pearson & Garber, LLP
White Plains, New York

--and--

Kim Eleazer Richman
Richman Law Group
Brooklyn, New York

 *Attorney for Theodore Rothman*

Kim Eleazer Richman
Richman Law Group
Brooklyn, New York

--and--

Randi McGinn
Kathleen J. Love
McGinn, Carpenter, Montoya & Love, PA
Albuquerque, New Mexico

 *Attorney for Danae Grandison, Michael Laboon, and Dave Moyer*

Benjamin Michael Lopatin
Eggnatz, Lopatin, & Pascucci, LLP
San Francisco, California

--and--

Randi McGinn
Kathleen J. Love
McGinn, Carpenter, Montoya & Love, PA
Albuquerque, New Mexico

 *Attorney for Plaintiff Russell Brattain*

Daniel L. Warshaw
Alexander R. Safyan
Pearson, Simon & Warshaw, LLP
Sherman Oaks, California
--and--

Erika E Anderson
Law Offices of Erika E. Anderson
Albuquerque, New Mexico

--and--

Randi McGinn
Kathleen J. Love
McGinn, Carpenter, Montoya & Love, PA
Albuquerque, New Mexico

*Attorneys for Plaintiff Shannon White*

Gretchen Mary Elsner
Elsner Law & Policy, LLC
Santa Fe, New Mexico

--and--

Randi McGinn
Kathleen J. Love
McGinn, Carpenter, Montoya & Love, PA
Albuquerque, New Mexico

*Attorney for Plaintiffs Danae Grandison, Michael Laboon, and Dave Moyer*

John Allen Yanchunis, Sr.
Marisa Kendra Glassman
Morgan & Morgan, PA
Tampa, Florida

--and--

Scott W. Weinstein
Morgan & Morgan, PA
Fort Myers, Florida

--and--

Keith R. Mitnik
Morgan & Morgan, PA
Orlando, Florida

--and--

Randi McGinn
Kathleen J. Love
McGinn, Carpenter, Montoya & Love, PA
Albuquerque, New Mexico

*Attorneys for Plaintiff Ashley Waldo*

Steven William Teppler
Abbott Law Group, P.A.
Jacksonville, Florida

--and--

Randi McGinn
Kathleen J. Love
McGinn, Carpenter, Montoya & Love, PA
Albuquerque, New Mexico

*Attorney for Plaintiff Timothy Ruggiero*

John Russell Bart Pate
J.R. Pate, PC - Law Office
St Thomas, Virgin Island

--and--

Randi McGinn
Kathleen J. Love
McGinn, Carpenter, Montoya & Love, PA
Albuquerque, New Mexico

*Attorney for Plaintiff Desire Gudmundson*

Matthew David Schultz
Levin Papantonio Thomas P.A.
Pensacola, Florida

--and--

Randi McGinn
Kathleen J. Love
McGinn, Carpenter, Montoya & Love, PA
Albuquerque, New Mexico

*Attorney for Plaintiff Scott Johnston*

Joel R. Rhine
Rhine Law Firm, P.C.
Wilmington, North Carolina

--and--

Randi McGinn
Kathleen J. Love
McGinn, Carpenter, Montoya & Love, PA
Albuquerque, New Mexico

*Attorney for Jason Cole and Rachael King*

Chad C. Messier
Dudley Topper & Feuerzeig
St. Thomas, United States Virgin Islands

--and--

Andrew G. Schultz
Rodey Dickason Sloan Akin & Robb, P.A.
Albuquerque, New Mexico

--and--

Peter J. Biersteker
William D Coglianese
Jon Gregory Heintz
Jordan Von Bokern
Noel J. Francisco
Washington, DC
Jones Day

--and--

David B. Alden
Joseph R Coburn
Cleveland, Ohio
Jones Day

--and--

David M. Monde
Michael Fraser Stoer
Jennifer Bunting-Graden
Atlanta, Georgia
Jones Day

--and--

Paul Courtney Huck, Jr.
Miami, Florida
Jones Day

--and--

Sharyl Reisman
Mark R. Seiden
Charles R. A. Morse
New York, New York
Jones Day

--and--
David Craig Kiernan
San Francisco, California
Jones Day

--and--

Troy A. Fuhrman
Tampa Florida
Jones Day

*Attorneys for the Defendants*